IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| THOMAS MCEACHIN, | ) | |
| --- | --- | --- |
| | ) | Civil Action No. 06 - 1439 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| HARRY E. WILSON, Superintendent; DR. GINCHEREAU; PRISON HEALTH SERVICES; MIKE HICE; ROBERT TRETINIK, Health Care Administrator; and DR. BASTICH, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.        RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that the Motion to Dismiss Plaintiff's Complaint, or in the alternative, Motion for More Definite Statement filed by Defendants Prison Health Services, Inc and Mike Hice (doc. no. 13) be denied.

**II.       REPORT**

Plaintiff, Thomas McEachin, is a state prisoner currently confined at the State Correctional Institution at Fayette, Pennsylvania (SCI-Fayette). He commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, complaining that he has been denied adequate medical care in violation of the Eighth Amendment of the United States Constitution. He brings this action against Superintendent Harry E. Wilson; Dr. Ginchereau; Prison Health Services (PHS); Mike Hice; Healthcare Administrator Robert Tretinik, and Dr. Bastich in their official and individual capacities.

A. Standard of Review – Motion to Dismiss

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. In order to survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 1275 S.Ct. 1955, 1974 (2007) (citations omitted). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above a speculative level on the assumption that the allegations in the complaint are true." Id. at 1965. The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976).

B. Plaintiff's Allegations

In his Complaint, Plaintiff makes the following allegations. Plaintiff suffers from keratoconus disease, a progressive and degenerative cornea disease, which interferes with the major life activities of seeing and personal hygiene. Plaintiff first was diagnosed with keratoconus disease in 1996 while in custody at SCI Graterford. The illness has caused thinness of his corneas, which can lead to permanent loss of sight. Plaintiff also has a history of seizure disorder, which increases the risk of permanent loss of sight.

Plaintiff's condition requires a corneal transplant in his right eye and a specially designed contact lens for his left eye, which requires frequent refitting and servicing. In October of 2000, a corneal consult was recommended but Plaintiff has not seen a corneal specialist due to the actions or inactions of Defendants Tretinik, Hice, Ginchereau, Bastich and Wilson. Plaintiff

suffers from blurred vision, headaches, loss of peripheral vision, loss of depth perception, eye pain, and rapidly changing visual acuity.

While he was confined at SCI-Albion, Plaintiff was given a specially-designed contact for his left eye. In September of 2004, Plaintiff was transferred to SCI-Fayette and was placed on Administrative Custody (AC) status in the Restricted Housing Unit (RHU) for classification purposes. Plaintiff informed the Program Review Committee (PRC) of his need for visual accommodations and an eye evaluation. Plaintiff was seen by the Program Review Committee on May 19, 2006, June 19, 2006, June 8, 2005, November 23, 2005, and November 22, 2004. In each of these reviews, Plaintiff discussed his visual needs, specifically, his need for contact lenses as an accommodation for his disability and a transfer to obtain appropriate medical care. Despite Plaintiff's repeated requests, Defendants failed to ensure he received an appropriate eye exam, contact lenses, a corneal transplant, or a transfer to a facility equipped to deal with Plaintiff's visual needs. As a result, Plaintiff was forced to wait for a specially designed contact for his left eye for approximately two years while at SCI Fayette.

Plaintiff informed Defendant Tretinik of his medical eye disease on September 27, 2004 via an inmate request to staff. Defendant Tretinik responded to Plaintiff on September 28, 2004 by telling him to sign up for sick call. On September 28, 2004, Defendant Tretinik responded to Plaintiff's grievance regarding Plaintiff's medical concerns, including his visual disabilities, stating "I agree with the PA, in that the inmate is now under the care of SCI-Fayette's medical director, and is no longer at SCI-Albion…[h]e will continue to receive the medical care he needs verses [sic] wants." SCI Fayette's medical staff informed Plaintiff that contact lenses were not allowed at SCI Fayette and Plaintiff's specially-designed, medically necessary contacts were taken

3

from him in November 2004. Despite knowledge of Plaintiff's eye disease, Defendant Tretnik refused to provide Plaintiff with specially designed, medially necessary contact lenses for two years.

In June 2005, Plaintiff requested to see the eye doctor but was denied by medical staff. Plaintiff was scheduled for an eye exam in July of 2005. Defendant Tretnik interfered with Plaintiff's eye exam on July 14, 2005. Prior to Plaintiff's scheduled eye exam Defendant Hice spoke with Defendant Bastich about Plaintiff. After Defendant Hice spoke with Defendant Bastich, Defendant Bastich failed to perform an appropriate eye exam. Instead of having an eye exam to assess his vision in July 2005, Plaintiff simply was ordered glasses. When the glasses arrived, Defendant Hice told Plaintiff that SCI-Fayette did not approve of contact lenses and Plaintiff never would be provided with contact lenses again. In the summer of 2005, Defendant Tretinik told Plaintiff his eye problems have been corrected with glasses and reprimanded Plaintiff for refusing to accept the inappropriate treatment. Plaintiff tried to secure help from a doctor at SCI Fayette by writing him requests; however, Defendant Tretinik continued to respond to Plaintiff's requests in lieu of the doctor.

Plaintiff's eye condition requires treatment by a specialized eye doctor; a registered nurse is not qualified to treat or diagnose keratoconus disease. Defendant Tretinik determined when it was necessary for a doctor to respond to Plaintiff's written requests. Plaintiff tried to get help obtaining visual accommodations and treatment by corresponding with the Bureau of Health Care Services. The Bureau of Health Care Services contacted SCI Fayette sometime before May 8, 2006 to determine the status of Plaintiff's contact lenses. Upon information and belief, Dr. Ginchereau contacted and received information from Mr. Tretinik about Plaintiff's contact lenses on or before his letter responding to Plaintiff on May 8, 2006. Three months later, Plaintiff again contacted the

Bureau of Health Care Services. The Bureau of Health Care Services responded on August 21, 2006 stating the SCI Fayette medical team had approved a consult for fitting for appropriate contact lenses.

With knowledge of Plaintiff's medical eye condition, Defendants Tretinik, Hice, and Wilson refused to provide Plaintiff with his specially designed contact lens and/or his needed corneal transplant for approximately two years, which rendered him functionally blind during that time. The delay in providing the contact led to deterioration in Plaintiff's vision and the continued denial of corrective surgery poses a risk to Plaintiff's eyesight and decreases the success rate of the surgery. Defendants Wilson, Tretinik, Hice, Ginchereau, Bastich and Prison Health Services knew of Plaintiff's medical needs and deliberately refused to provide him with the required care. By failing to provide Plaintiff with care, Plaintiff has suffered and continues to suffer from difficulty seeing, deteriorating vision, and risk of permanent vision loss.

The policy and/or practice of classifying corneal transplants as elective surgeries deprives inmates of needed medical care and evidences deliberate indifference to a serious medical need.

### C. Liability under 42 U.S.C. § 1983

In order to assert liability pursuant to 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

1. Statute of Limitations

Defendants first argue that Plaintiff's claims are barred by the statute of limitations. In this respect, the limitations period for civil actions brought under 42 U.S.C. § 1983 is determined by state law.[1] Under Pennsylvania law, the applicable limitations period for civil rights actions asserted under 42 U.S.C. § 1983 is two years. *See* 42 Pa. Cons. Stat. § 5524.

The date when a civil rights action accrues (begins to run) is a matter of federal law. Albright v. Oliver, 510 U.S. 266, 280 n.6 (1994) (J. Ginsburg, concurring). A claim accrues when the plaintiff becomes aware, or should have become aware, of both the fact of injury and its causal connection to the Defendant. *See* Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (it is the wrongful act that triggers the start of the limitations period); Keystone Ins. Co. v. Houghton, 863 F.2d 1125, 1127 (3d Cir. 1988) (a federal cause of action accrues when the plaintiff is aware, or should be aware, of the existence of and source of injury, not when the potential claimant knows or should know that the injury constitutes a legal wrong).

Plaintiff's Complaint is signed and dated July 10, 2007. Due to the two-year limitations period, Plaintiff cannot impose liability against Defendants under 42 U.S.C. § 1983 for events that occurred prior to July 10, 2005. Notwithstanding, several courts of appeals have concluded that, because exhaustion of administrative remedies is mandatory under the PLRA, the statute of limitations applicable to § 1983 actions must be tolled while a prisoner exhausts his claims. *See, e.g.*, Brown v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005) (agreeing with "the uniform holdings of the circuits that have considered the question that the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process"); Johnson

---

1. *See* Wilson v. Garcia, 471 U.S. 261, 272-76 (1985) (42 U.S.C. § 1983).

6

v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001) (holding "a federal court relying on the Illinois statute of limitations in a § 1983 case must toll the limitations period while a prisoner completes the administrative grievance process"); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000) (because PLRA prevents bringing § 1983 action until administrative remedies are exhausted, state statute of limitations tolled while prisoner exhausted); Harris v. Hegmann, 198 F.3d 153, 158 (5th Cir.1999) (state law precedent dictates that PLRA's exhaustion requirement prevents state statute of limitations from running until prisoner has exhausted).

Here, Plaintiff alleges that he received final review of his grievances regarding his eye surgery on April 12, 2006 and final review of his grievances concerning his contact lenses on February 2, 1006. Defendants Hice and PHS appear to agree that the limitations is period is tolled while a prisoner exhausts his claims; however, they assert that the limitations period still may bar Plaintiff's claims because it is not known at this time when the initial grievances were filed. As there is no record evidence as to this date, Defendants are not entitled to dismissal based on the statute of limitations. They may raise this defense more properly in a motion for summary judgment following further factual development of Plaintiff's claims.

2. Constitutional Violation

Plaintiff's claim concerning his medical treatment invokes the protections of the Eighth Amendment. In order to make out a prima facie case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements. First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v.

7

Chapman, 452 U.S. 337, 347 (1981)). Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer v. Brennan, 511 U.S. 825; Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347.

To state an Eighth Amendment violation in the context of medical treatment, an inmate must show prove two elements: 1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978). The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

Here, Plaintiff claims that he suffers from keratoconus disease, a progressive and degenerative corneal disease, in both eyes. Thus, Plaintiff has alleged the existence of a serious medical need. In addition, Plaintiff has pleaded that Defendants acted with deliberate indifference because they denied needed medical treatment, *i.e.*, treatment by a specialist, specially designed contact lenses and corrective surgery. He claims that defendants delayed proper treatment for two

years and denied him surgery based on their erroneous policy of classifying the necessary surgery as elective.

Taken as true, as this Court must when reviewing a motion to dismiss, the Plaintiff's allegations and the record evidence are sufficient to show that the Defendants may have acted with deliberate indifference. Specifically, Plaintiff alleges that Defendants were on notice that Plaintiff faced a substantial risk of serious harm due to his disease and disregarded that risk by failing to take reasonable measures to abate it. He further claims that he was receiving treatment before he was transferred but it was discontinued after he was transferred to SCI-Fayette. Thus, Plaintiff has alleged a violation of his rights as protected by the Eighth Amendment. Consequently, the Motion to Dismiss filed by Defendants Hice and PHS should be denied.

Moreover, Plaintiff's allegation are sufficient to state a claim as to Defendants PHS and Hice. Specifically, Plaintiff alleges that Defendant Hice interfered with the treatment of his eye disease by providing him with glasses rather than contact lenses and that when the glasses arrived, Hice told Plaintiff that SCI-Fayette did not approve of contact lenses and Plaintiff never would be provided with contacts. With respect to PHS, Plaintiff alleged that PHS' custom, policy and/or practice to deny surgeries to inmates by classifying such surgeries as "elective" resulted in deliberate indifference to his serious medical need. Thus, Defendants Hice and PHS have fair notice of the claims against them. Accordingly, their Motion for More Definite Statement should be denied.

3. Punitive Damages

As a final matter, Defendants seek dismissal of Plaintiff's claim for punitive damages. As noted by Plaintiff: "A jury may assess punitive damages in a civil rights action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless

9

or callous indifference to the federally protected rights of others." <u>Alexander v. Riga</u>, 208 F.3d 419, 430-31 (3rd Cir. 2000). It is premature at this stage to dismiss Plaintiff's claims for punitive damages. Consequently, Defendants' Motion to dismiss these claims should be denied.

### III.     **CONCLUSION**

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss Plaintiff's Complaint, or in the alternative, for More Definite Statement filed by Defendants Hice and PHS (doc. no. 13) be denied.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Dated:     May 7, 2008                                                      Lisa Pupo Lenihan
                                                                                      United States Magistrate Judge